IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.  08 C 285 |
| vs. ) | |
| ) | Judge Ronald A. Guzman |
| FUNDS IN THE AMOUNT OF ONE ) | |
| HUNDRED NINETY-NINE THOUSAND ) | |
| NINE HUNDRED EIGHTY FIVE ) | |
| DOLLARS ($199,985.00) ) | |
| ) | |
| Defendant. ) | |
| ) | Date:  1 July 2008 |
| / ) | Time:  9:30 a.m. |
| ) | Courtroom:  1219 |
| JOCELYNE MARIE JACKSON, ) | |
| ) | |
| Claimant. ) | |
| ) | |
| / ) | |
| ) | |

**MOTION TO SUPRESS EVIDENCE AND REQUEST FOR EVIDENCIARY HEARING;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;
DECLARATION OF JOCELYNE MARIE JACKSON**

Claimant Jocelyne Marie Jackson ("Claimant") hereby moves to suppress all evidence seized and the fruits thereof, resulting from her detention by law enforcement agents and the search and seizure of her luggage on or about August 27, 2007, in her sleeping compartment on an Amtrak train at Union Station in Chicago, Illinois.  Claimant submits that DEA agents lacked any evidence of criminal activity sufficient to justify the detention of Claimant, the coercive

1

interrogation of her, and the search of her luggage, and had no reason to proceed, in any event, without first obtaining a warrant.

Additionally, an evidentiary hearing is respectfully requested if necessary to resolve any unresolved disputed issues of fact that may exist in the present case.

## STATEMENT OF FACTS [1]

On August 27, 2007, four Drug Enforcement Administration (DEA) Agents conducted a review of the computerized travel manifest for Amtrak at Union Station in Chicago, IL and noticed that Claimant had made a cash purchase of a train ticket from Atlanta, GA to Emeryville, CA via Chicago, IL.

Agents proceeded to the Amtrak train car where Claimant was expected and approached Claimant after she had entered her sleeper car room. The four agents identified themselves and claimed to have conducted a "noncustodial interview" with Claimant in her sleeper car room. Agents then entered Claimant's small sleeper car room on the train and also blocked the entrance to that sleeper car room and began to question and interrogate her. In response to questioning, Claimant told the agents that she was carrying her own bags,that she had checked one additional bag, that no one had given here any packages to transport on the train, and that she was not in possession of any weapons, illegal drugs, or any large amounts of currency.

---

[1] For the purpose of this motion, most of the statement of facts are those taken from the Verified Complaint for Forfeiture, filed on 11 January 2008. In addition, Claimant's declaration is provided to this Court as part of this motion and in regards to her detention and the seizure of her luggage. Claimant does not accept the accuracy of Plaintiff's statements, but only presents them for the limited purpose of showing that, even if viewed as true, such representations did not justify the search and seizure of Claimant's luggage.

Agents asked Claimant for consent to search her luggage. Apparently before receiving a response, Task Force Officer (TFO) Randal Szmergalski then began to pick up one of Claimant's bags. Claimant allegedly attempted to hand TFO Szmergalski a different bag, but TFO Szmergalski observed that the first bag had a lock on it and began questioning Claimant about whether she had the combination or key to said lock. Claimant said that she did not, and at this time allegedly appeared nervous and hesitant. TFO Szmergalski again asked Claimant for consent to open her bag, this time specifying that he wished to open it by "popping" the zipper, which he then proceeded to do. Further events, not relevant to this motion to suppress, transpired thereafter and the search of the luggage eventually led to the seizure of defendant currency from Claimant's bag. At a later time, the agents asked Claimant to sign a consent form indicating that she had consented to the search of her belongings. Claimant refused to sign that form and denied that she had consented to the search of her bag.

## ARGUMENT

The Fourth Amendment of the United States constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Claimant's luggage was searched and seized, without a warrant, and in violation of the Fourth Amendment of the Constitution. All evidence obtained as a result of that unlawful search and seizure should be suppressed in the instant matter.

**I.     CLAIMANT HAS STANDING TO CHALLENGE THE DETENTION, SEIZURE AND SEARCH OF HER LUGGAGE**

In order for a defendant to have standing to challenge a search on Fourth Amendment grounds, a defendant must show that under the totality of the circumstances they had a legitimate

3

expectation of privacy in the particular place searched or item seized. *See e.g.*, *Rakas v. Illinois*, 439 U.S. 128 (1979). A person who has a property or possessory interest in the place searched or the items seized, has a legitimate expectation of privacy sufficient to invoke the Fourth Amendment's protections to be free from unreasonable searches and seizures. *See e.g.*, *Rakas*, 439 U.S. at 148; *United States v. Padilla*, 508 U.S. 77 (1993).

In the instant case, Claimant clearly has a sufficient expectation of privacy to assert a violation of her Fourth Amendment rights where she was the possessor and owner of the luggage that was searched and seized, and she is the person who was approached and interrogated in her private sleeper car room, where her luggage was kept.

## II.     PLAINTIFF BEARS THE BURDEN OF PROVING THAT THE WARRANTLESS SEARCH AND SEIZURE WERE NOT VIOLATIVE OF THE FOURTH AMENDMENT

It has long been hornbook law that the Fourth Amendment embodies a strong preference for search warrants. See e.g. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968) ("police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure.")  In *United States v. Lefkowitz*, 285 U.S. 452, 464 (1932), the Supreme Court stated:

> ". . . the informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers and others who may happen to make arrests. Security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers while acting under the excitement that attends the capture of persons accused of crime. . . ."

*Id.*

> It is a cardinal rule that in seizing goods and articles, law enforcement agents must secure and use warrants whenever reasonably practicable.... (citations omitted.) This rule rests upon the desirability of having magistrates rather than peace officers determine when searches and seizures are permissible and what limitations should be placed on such activities. (Citations omitted.) In their understandable zeal to ferret out crime and in the excitement of the capture of suspected persons, officers are less likely to possess the detachment and neutrality with which constitutional rights of the suspect must be viewed.
>
> *Trupiano v. United States*, 334 U.S. 699, 705 (1948) (overruled on other grounds, 399 U.S. 56, 66 (1950))

Although warrantless searches are not absolutely prohibited, deviating from the warrant requirement must be done only in "exceptional" circumstances (See *Johnson v. United States*, 333 U.S. 10, 13-15 (1948)) and exceptions to the warrant requirement are "jealously and carefully drawn." See *United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992), *cert. denied*, 510 U.S. 900 (1993). Thus, Plaintiff bears the burden of establishing that a warrantless search and seizure was reasonable and not violative of the Fourth Amendment.

> "The touchstone of the Fourth Amendment is reasonableness ... **Warrantless searches are per se unreasonable unless the search falls within one of "a few specifically established and well-delineated exceptions."** *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). Confronted with a warrantless search, **it is the burden of the government to prove** that the search was reasonable under **a particular exception**. *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971).
>
> *McGann v. Northeast Ill. Regional Commuter R.R. Corp.*, 8 F.3d 1174, 1178 (7th Cir. 1993) (emphases added).

In the instant case, since the search of Claimant's luggage was conducted without a warrant, Plaintiff has the burden of establishing its lawfulness under the Fourth Amendment.

III.    **THE SEARCH WAS CONDUCTED IN VIOLATION OF THE FOURTH AMENDMENT WHERE PLAINTIFF CANNOT SATISFY ITS BURDEN OF DEMONSTRATING A RECOGNIZED EXCEPTION TO THE WARRANT REQUIREMENT**

In the present case, Plaintiff will likely argue that the search at issue was lawful as a warrantless search conducted pursuant to some sort of consent by Claimant. However, for "a warrantless search premised on consent to be valid, the government **must** show that the consent was freely and voluntarily given--a factual question to be determined by the totality of the circumstances." *McGann v. Northeast Ill. Regional Commuter R.R. Corp.*, 8 F.3d 1174, 1178 (7th Cir. 1993) (emphasis added) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).  The warrantless search is not justified where Plaintiff is unable to demonstrate that valid consent was given.  Plaintiff, therefore, has the burden of proving that Claimant's "consent, if such consent exists,  was, in fact, freely and voluntarily given." See *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792, 20 L. Ed. 2d 797 (1968). Moreover,

> ... we should point out that consents to search are carefully examined for evidence of coercion or duress. This is particularly true in the absence of a written waiver or warnings concerning Fourth Amendment  rights. See *United States v. Nikrasch*, 367 F.2d 740, 744 (7th Cir. 1966); *Porter v. Ashmore*, 298 F. Supp. 951, 955 (D.S.C. 1969), rev'd on other grounds, 421 F.2d 1186 (4th Cir. 1970), cert. denied, 402 U.S. 981, 91 S. Ct. 1644, 29 L. Ed. 2d 146 (1971); cf. *United States v. Miller*, 395 F.2d 116, 118 (7th Cir.), cert. denied, 393 U.S. 846, 89 S. Ct. 132, 21 L. Ed. 2d 117 (1968). But see *Byrd v. Lane*, 398 F.2d 750, 754-755 (7th Cir. 1968), cert. denied, 393 U.S. 1020, 89 S. Ct. 625, 21 L. Ed. 2d 564 (1969); *Gorman v. United States*, 380 F.2d 158, 164 (1st Cir. 1967).
>
> Courts have not looked with favor on the practice of substituting consent for the authorization of a search warrant.

*United States v. Dichiarinte*, 445 F.2d 126, n.1 (7th cir. 1971)

Plaintiff's obligation in this regard has been called a "heavy burden" by the Ninth Circuit Court of Appeals.  See *United States v. Chan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997), *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Also, the Seventh Circuit has stated: "It is high time that courts place their stamp of disapproval upon this increasing practice of federal officers searching a home without a warrant on the theory of consent, particularly where no reason is shown why a search warrant was not obtained." See *United States v. Arrington*, 215 F.2d 630, 637 (7th Cir. 1954).

In the instant case, Plaintiff will first have to establish that any consent was ever given by Claimant for the search of her luggage.  Furthermore, even if it is found that Claimant affirmatively gave consent to search, which she disputes (and which is evidenced by her own Declaration and her refusal to sign any statement that established such a consent), Plaintiff nevertheless must overcome its burden of showing, by a preponderance of the evidence, both that such consent was freely and voluntarily given and that the search did not exceed the scope of that consent.  *See United States v. Matlock*, 415 U.S. 164, 171 (1974).

Plaintiff here will not be able to satisfy its heavy burden of proving that the consent to search Claimant's luggage was either given or was a valid consent, even if some sort of consent was given.  As mentioned *supra*, Claimant disputes that there was any affirmative consent given (at any point) and the complaint merely declares that "Claimant consented to this procedure", referring to the intent of the agent to open the luggage in his hand by "popping" the zipper.

More importantly, the totality of the circumstances here reveals a troubling environment of coercion and intimidation. Claimant was approached at or in her sleeper car by multiple agents on clearly less than any reasonable suspicion (the sole piece of information about Claimant was

that she paid for a train ticket with cash). Government agents were told nothing unusual or suspect in Claimant's responses to questions about the luggage she was carrying or about Claimant carrying weapons, drugs or currency. These four agents then crowded in and about Claimant's small sleeper car room on the train, which common sense tells us is a small confining space. Before even allowing a response to his request for consent to search Claimant's bag, TFO Szmergalski began to grab Claimant's bag and took control of it. From that point in time, the environment of intimidation continued and worsened. The complaint for forfeiture clearly demonstrates overzealous government agents who bullied their way into Claimant's private sleeping compartment on the train, questioned her extensively, did not tell her she was free to refuse to talk to them, grabbed her locked luggage then opening it by popping the zipper, and later tried to get her to sign a consent form justifying their conduct which she refused to do. These facts are insufficient to satisfy the government's heavy burden of showing any free and voluntary consent to search.

In fact, the circumstances of the encounter between Claimant and four government agents in the small confines of her sleeper car room, actually vitiates any claim that her consent was given for the search of her luggage, in that the encounter itself constituted a Fourth Amendment seizure invalidating such consent:

> "Because a person on a bus or in an otherwise confining space 'has no desire to leave' and would wish to remain even if police were not present, 'the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter' ... [the defendant] could not have expressed their desire to terminate the encounter with the police by leaving the scene. Like the person seated on the bus in *Bostick*, a person staying in a motel room has no desire to leave and would remain whether police were present or not ... [and he was] 'seized' within the meaning of the Fourth Amendment if a

> reasonable person would not have felt free to decline Deputies Hurrle's and Lent's requests to open the door or to otherwise ignore the deputies' presence ... When a person is in a confined area, encircling the area in an intimidating fashion contributes to a reasonable belief that ignoring the law enforcement presence is not an option ... Because the seizure was not supported by reasonable suspicion [the illegal seizure] vitiated the subsequent consent to search … "
> *United States. v. Jerez,* 108 F.3d 684, 690-696 (7th Cir. 1997) (citations omitted).

The circumstances in this case are near identical to those described in *Jerez*, if not even more compelling.  Claimant was confined in a small sleeper room space on a train that was getting ready to leave the station and take Claimant back to her home.  She was not only metaphorically, but actually, encircled by four intimidating government agents who entered her small compartment and proceeded to question her about the facts and circumstances of her life and about drugs and money.  One agent then proceeded to grab one of her bags in his desire to search it.  Claimant was, virtually, trapped, and confined. She had nowhere to go and no escape.

Here, government agents approached Claimant without reasonable suspicion because the only thing they new about her was that she paid for her train ticket with cash - and such information describes a very large number of "presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure." *Reid v. Georgia*, 448 U.S. 438, 441 (1980). The encounter between four government agents and Claimant was unsupported by any reasonable suspicion, the circumstances of their questioning her were coercive, and the seizure of her luggage and the search of that luggage was done without any lawful justification or valid consent, freely and voluntarily given.

As a consequence of these circumstances, Claimant's Fourth Amendment rights were clearly violated and any evidence obtained as a result of such violation must be suppressed in this case or in any other proceeding against Claimant.

IV.   **ALL EVIDENCE OBTAINED AS A RESULT OF AN UNLAWFUL WARRANTLESS SEARCH IS THE "FRUIT OF THE POISONOUS TREE" AND MUST BE SUPPRESSED**

The exclusionary rule operates to prevent the use of evidence obtained as the indirect product of unlawful conduct in the same manner that it precludes the use of evidence directly obtained by improper conduct. *Segura v. United States*, 468 U.S. 796, 804 (1984). This principal has become established as the "fruit of the poisonous tree" doctrine. *Wong Sun v. United States*, 371 U.S. 471 (1963). In the instant case, law enforcement conducted an illegal warrantless search of Claimant's luggage. Accordingly, all evidence, direct or indirect, adduced as a result of the Fourth Amendment violations must be suppressed.

V.   **CLAIMANT RESPECTFULLY REQUESTS AN EVIDENTIARY HEARING IF NECESSARY TO RESOLVE ANY CONTESTED FACTS**

In the present case, if this Court holds that there are unresolved conflicting factual allegations, an evidentiary hearing should be held to resolve those contested issues of facts material to the Court's determinations. An evidentiary hearing on this motion to suppress is required if the court concludes from the moving papers that there are unresolved contested issues of fact going to the validity of the search at issue and "if proven would justify relief." *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998). See also *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986).

The district court is obliged to hold a hearing if Claimant's version of facts shows that the search was illegal. *Cf. United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1988); *Nechy v. United States*, 665 F.2d 775, 776 (7th Cir. 1981); see also *United States v. Sophie*, 900 F.2d 1064, 1071-72 (7th Cir. 1990).

> Whether the factual conflict here is material depends on whether the arrest's legality differs under the different versions of facts. If the arrest was legal under either version of the facts, we must affirm the district court; if the arrest was illegal under either version of the facts, we must reverse. Only if the arrest was legal under the government's facts but illegal under Berkowitz's must we remand for an evidentiary hearing.
>
> *United States v. Berkowitz*, 927 F.2d 1376, 1385 (7th Cir. 1991).

In *Berkowitz*, the Court of Appeals reversed and remanded when it was shown that there was a factual dispute in the case, resolving that dispute was necessary to determine whether Berkowitz's arrest was legal, and the district judge should therefore have held an evidentiary hearing. *Id*. at 1388.

Claimant submits that, just as in *Berkowitz*, she has demonstrated that the agents actions resulted in a coercive detention and an illegal search and seizure; and, if this Court deems there are contradictory versions of this encounter that need to be resolved by the Court in order to make a determination of the issues, an evidentiary hearing is required to resolve those two contradicting versions of events.

Nonetheless, Claimant submits that the uncontroverted evidence will show that the encounter between herself and the government agents was so coercive as to be unlawful and that, no matter what followed, any consent, even if it is alleged such consent was given, was vitiated and of no legal significance. Furthermore, the circumstances of the case show that no consent

11

(affirmative or implied) was ever, in fact, given to search, especially since Claimant refused to even sign a consent form when requested to do so by the agents.

But, in any event, if this Court deems it necessary to conduct an evidentiary hearing to resolve any contested issues of fact, such an evidentiary hearing is required and requested.

## VI.  **CONCLUSION**

The encounter between Claimant and four government agents in her sleeper compartment on an Amtrak train was such a coercive encounter as to, itself, constitute a Fourth Amendment seizure, not supported by any reasonable suspicion. Furthermore, any alleged consent given by Claimant was vitiated by the coercive atmosphere of her detention and the seizure and search of Claimant's luggage was made in violation of the Claimant's Fourth Amendment rights. Consequently all the evidence, directly or indirectly, that resulted from this illegal conduct, must be suppressed in this case.

In addition, if this Court deems it necessary to conduct an evidentiary hearing to resolve any contested issues of fact, such an evidentiary hearing is so requested.

Dated:  25 June 2008

                                         Respectfully submitted,

                                         S/DAVID M. MICHAEL
                                         DAVID M. MICHAEL, CSBN 74031
                                         LAW OFFICES OF DAVID M. MICHAEL
                                         101 California Street, Suite 2450
                                         San Francisco, CA 94111
                                         Telephone:   (415) 946-8996
                                         Facsimile:    (877) 538-6220
                                         E-mail:       dmmp5@aol.com

S/DIANA T. FRAPPIER
DIANA T. FRAPPIER CSBN 184048
344  40th Street
Oakland, CA 94609
Telephone:  (510) 428-3939
Facsimile:   (415) 233-4477
E-mail:       esqdiana@comcast.net


S/MICHAEL C. ROSENBLAT
MICHAEL C. ROSENBLAT, ESQ.
33 N. LaSalle, Suite 2900
Chicago, IL 60602-2665
Telephone: (312) 948-0006
Facsimile:   (312) 551-0322

Attorneys for Claimant JOCELYNE MARIE JACKSON

## DECLARATION OF FACT OF JOCELYNE MARIE JACKSON IN SUPPORT OF MOTION TO SUPPRESS

I, Jocelyne Marie Jackson, am the Claimant in the above captioned case, and declare as follows:

1. In the afternoon of August 27, 2007, at Union Station in Chicago, Illinois, I boarded an Amtrak train that was scheduled to depart for Emeryville, California. I had made reservations for this trip about a week or so prior, but pushed back my departure by a day or so and eventually went in to pay for the tickets the day before I left.

2. After I arrived in my private sleeper car room for this trip on August 27, 2007, I was approached by four law enforcement officers who told me they were with the Drug Enforcement Administration.

3. Agents entered and agents blocked the doorway to my private sleeper car room on the train and began asking me numerous questions about my identity and my travel arrangements and the contents of my personal belongings.

4. During the agents' questioning, one of the agents picked up one of my bags, a zipper bag with a combination lock on it.  I refused to give the agents the combination to that lock and at no time did I ever, in any way, give any of the agents permission to search that bag. I did not give permission to any of the agents for "popping" the zipper of my locked bag, and do not even know what "popping" a zipper means.

5. Despite my refusal to give permission for any of the agents to search my locked bag, one of the male agents, in some fashion, forcefully ripped open, or "popped" the zipper of that locked bag and searched it without my permission.

6. Agents then told me that I had to leave my sleeper car room on the train and come with them to their office in the train station, which I did.

7. When I arrived at the office, I asked for a lawyer, but I was largely ignored, as agents were doing paper work and looking on the computer.

8. I engaged in small talk with the female agent and was asked to sign several papers, including a written form indicating that I gave written consent to the search of my bags.  I refused to sign any of those papers, including the document that said I gave agents permission to search my bags.  I told the agent that I had never given consent for the search of that bag.

I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge, recollection, and belief.  Executed on 26 June 2008 in San Francisco, CA.

            S/JOCELYNE MARIE JACKSON
            JOCELYNE MARIE JACKSON
            Declarant

**CERTIFICATE OF SERVICE**

I hereby certify that, on 26 June 2008, I caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

AUSA Charles E. Ex
Office of the U.S. Attorney
Northern District of Illinois
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604

            S/ DAVID M. MICHAEL
            DAVID M. MICHAEL