IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 08 C 285 |
| vs. | ) |
| | ) Judge Ronald A. Guzman |
| FUNDS IN THE AMOUNT OF ONE HUNDRED NINETY-NINE THOUSAND NINE HUNDRED EIGHTY FIVE DOLLARS ($199,985.00) | ) |
| Defendant. | ) |
| JOCELYNE MARIE JACKSON, | ) |
| Claimant. | ) |

**CLAIMANT'S REPLY IN SUPPORT OF MOTION TO SUPRESS EVIDENCE**

  As set forth herein, Claimant's motion to suppress arose out of an encounter between claimant and the four DEA agents who detained her and searched and seized her luggage on or about August 27, 2007, in her sleeping compartment on an Amtrak train at Union Station in Chicago, Illinois. The only evidence relevant to this Court's resolution of that issue is what the agents knew at the time of the stop of Claimant and what occurred during that encounter.

1

In its opposition to claimant's motion to suppress, the government fails to controvert the fact, as clearly shown by the circumstances of this case, that no consent was ever given by Claimant for the search of her luggage and fails to controvert the fact that, given the powerfully coercive atmosphere at the time of the detention of Claimant, any consent, even if given, was not done so freely and voluntarily.

**ARGUMENT**

I.     **No Valid Consent Was Ever Given For the Search of Claimant's Luggage**

This Court may conclude, from the pleadings filed to date, that the government failed to meet its burden to prove that the warrantless search of Claimant's luggage was reasonable under a particular exception to the warrant requirement of the Fourth Amendment. *McGann v. Northeast Ill. Regional Commuter R.R. Corp.*, 8 F.3d 1174, 1178 (7th Cir. 1993).

It appears that the uncontroverted evidence before this Court shows that Claimant did not voluntarily give consent to the government agents for the search of her luggage and that there existed no other justification for the agents to open her luggage and search it. Consequently, this Court may find, based solely on the pleadings, that Claimant's luggage was searched and seized, without a warrant, and in violation of the Fourth Amendment of the Constitution and that all evidence obtained as a result of that unlawful search and seizure should be suppressed in the instant matter.

First, despite the government's late unverified claims in its Opposition, the agent's sworn statement set out in the Verified Complaint for forfeiture, reveals that, while crowded in Claimant;s sleeper car compartment on the Amtrak train, one of the four agents, Task Force

Officer (TFO) Randal Szmergalski, asked Claimant for consent to search her luggage. Apparently before receiving a response, TFO Szmergalski then began to pick up one of Claimant's bags. Claimant allegedly attempted to hand TFO Szmergalski a different bag, but TFO Szmergalski observed that the first bag had a lock on it and began questioning Claimant about whether she had the combination or key to said lock. Claimant said that she did not, and at this time allegedly appeared nervous and hesitant. TFO Szmergalski again asked Claimant for consent to open her bag, this time specifying that he wished to open it by "popping" the zipper, which he then proceeded to do. Verified Complaint for Forfeiture, at p.3.

Even if this Court discounts Claimant own denial of giving any consent to opening her luggage, the Verified Complaint for Forfeiture merely states that "Claimant consented to this procedure", referring to the intent of the agent to open the luggage in his hand by "popping" the zipper. Verified Complaint for Forfeiture, at p.3. This falls fall short of the clear showing of consent required by the Supreme Court and this circuit, justifying a warrantless invasion of Claimant's possessions. *McGann v. Northeast Ill. Regional Commuter R.R. Corp.*, 8 F.3d 1174, 1178 (7th Cir. 1993), citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792, 20 L. Ed. 2D 797 (1968).

The surrounding circumstances also support the conclusion, based on the pleadings, that no valid consent was given by Claimant. Claimant was approached at or in her sleeper car by multiple agents on clearly less than any reasonable suspicion (the sole piece of information about Claimant was that she paid for a train ticket with cash). Government agents were told nothing unusual or suspect in Claimant's responses to questions about the luggage she was carrying or

about Claimant carrying weapons, drugs or currency. These four agents then crowded in and about Claimant's small sleeper car room on the train, which common sense tells us is a small confining space.  Before even allowing a response to his request for consent to search Claimant's bag, TFO Szmergalski began to grab Claimant's bag and took control of it.

In fact, the circumstances of the encounter between Claimant and four government agents in the small confines of her sleeper car room, actually vitiates any claim that a valid consent was given for the search of her luggage, in that the encounter itself constituted a Fourth Amendment seizure invalidating such consent. Claimant would not have felt free to leave nor would she have felt free to decline what the agents intended to do.

> "Because a person on a bus or in an otherwise confining space 'has no desire to leave' and would wish to remain even if police were not present, 'the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter' ... [the defendant] could not have expressed their desire to terminate the encounter with the police by leaving the scene. Like the person seated on the bus in *Bostick*, a person staying in a motel room has no desire to leave and would remain whether police were present or not ... [and he was] 'seized' within the meaning of the Fourth Amendment if a reasonable person would not have felt free to decline Deputies Hurrle's and Lent's requests to open the door or to otherwise ignore the deputies' presence ... When a person is in a confined area, encircling the area in an intimidating fashion contributes to a reasonable belief that ignoring the law enforcement presence is not an option ... Because the seizure was not supported by reasonable suspicion [the illegal seizure] vitiated the subsequent consent to search … "
>
> *United States. v. Jerez,* 108 F.3d 684, 690-696 (7th Cir. 1997) (citations omitted).

The circumstances in this case are near identical to those described in *Jerez*, if not even more compelling.  Claimant was confined in a small sleeper room space on a train that was getting ready to leave the station and take Claimant back to her home.  She was not only metaphorically, but actually, encircled by four intimidating government agents who entered her

small compartment and proceeded to question her about the facts and circumstances of her life and about drugs and money.  One agent then proceeded to grab one of her bags in his desire to search it.  Claimant was, virtually, trapped, and confined. She had nowhere to go and no escape.

Therefore, under the circumstances of the case, and the uncontroverted evidence before this Court, there was no valid free and voluntary consent ever given by Claimant for the search of her luggage, and it would be appropriate for this Court to so rule based solely on the pleadings filed.[1]

## II.     Inevitable Discovery

The government claims that, even if Claimant did not consent to a search of her lugage, that the agents would have inevitably discovered the contents since they had sufficient information to justify both a dog sniff of the luggage and, thereafter, a search warrant for the luggage. Gov't. Opp. At 13-15.  The government is wrong on both of these issues.

First, the only evidence the agents possessed in their encounter with Claimant to justify a further detention of her luggage (accepting their representations in that regards) was the fact that her travel itinerary was suspicious [2], her responses were hesitant and vague [3], her admissions that she did not have a key to one of the bags, and the fact that the bag appeared heavy.

---

[1] The government also alleges that Claimant's "extreme nervousness and anxiety" gave the agents justification for detaining her luggage even without her consent. Gov't. Opp. at 14-15.  Yet, nowhere in the Verified Complaint for Forfeiture nor in any declaration filed by the agents, does it indicate that Claimant was extremely nervous or had any anxiety at all during the encounter.  This representation is merely an unsupported fabrication.

[2] The government offers no explanation as to why purchasing a one-way first class ticket on Amtrak with cash the day before travel is suspicions.  There is none nor, hopefully, should the courts of this country, ever allow there to be.

Although the government glosses over it, the first line if inquiry is whether or not the government even had the right to detain Claimant's luggage for a dog sniff in the first place. The fact of the matter is that, if they did not open her luggage and relied on inevitable discovery, they would have to have justified the further detention of that luggage in order to conduct the dog sniff in the first place.

The detention of Claimant's luggage, even if temporary, implicates the Fourth Amendment and constitutes an unreasonable seizure.

> The *Fourth* and *Fourteenth Amendments*' prohibition of searches and seizures that are not supported by some objective justification governs all seizures of the person, "including seizures that involve only a brief detention short of traditional arrest. *Davis v. Mississippi, 394 U.S. 721 (1969)*; *Terry v. Ohio, 392 U.S. 1, 16-19 (1968)*." *United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)*. While the Court has recognized that in some circumstances a person may be detained briefly, without probable cause to arrest him, any curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity. See *Brown v. Texas, 443 U.S. 47, 51 (1979)*; *Delaware v. Prouse, 440 U.S. 648, 661 (1979)*; *United States v. Brignoni-Ponce, supra*; *Adams v. Williams, 407 U.S. 143, 146-149 (1972)*; *Terry v. Ohio, supra*.

*Reid v. Georgia,* 448 U.S. 438, 440 (1980).

Moreover, " ... it has long been the law that 'an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify

---

[3] This vague claim seems preposterous based on the government's own representations. The agents reported that Claimant fully answered each and every question they asked prior to the search of her luggage. There was no indication by the agents that she was vague in doing so. Gov't Opp., at 3. The government is left with hesitancy- the kind of hesitancy that might be expected when somebody is in their sleeper compartment on a train surrounded by four federal DEA agents.

or dispel the officer's suspicion in a short period of time.' *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983) (plurality opinion); see also *United States v. Tehrani*, 49 F.3d 54, 58, 61 (2d Cir. 1995) (scope and duration of investigative detention must be reasonable, both as to stop and to inquiry)." *Gilles v. Repicky*, 511 F.3d 239, 245 (2nd Cir. 2007).

The government's authority to detain a person only when reasonable suspicion exists applies to seizures of a person's possessions. See *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *United States v. Place*, 462 U.S. 696, 706, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983). Moreover:

> Particularly in the case of detention of luggage within the traveler's immediate possession, the police conduct intrudes on both the suspect's possessory interest in his luggage as well as his liberty interest in proceeding with his itinerary. The person whose luggage is detained is technically still free to continue his travels or carry out other personal activities pending release of the luggage [...but] such a seizure can effectively restrain the person since he is subjected to the possible disruption of his travel plans in order to remain with his luggage or to arrange for its return. Therefore, when the police seize luggage from the suspect's custody, we think the limitations applicable to investigative detentions of the person should define the permissible scope of an investigative detention of the person's luggage on less than probable cause.

*United States v. Place*, 462 U.S. 696, 708-709.

In determining whether reasonable suspicion is present, courts "look at the totality of the circumstances . . . to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (internal quotation marks omitted) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)).

Questions asked during an investigative stop "must be reasonably related in scope to the justification for their initiation," *United States v. Perez*, 37 F.3d 510, 513 (9th Cir. 1994), an

officer's line of questioning may be broadened if he "notices additional suspicious factors, but these factors must be 'particularized' and 'objective.'" Id.; *United States v. Baron*, 94 F.3d 1312, 1319 (9th Cir. 1996).

Applying the above law to the present facts warrants the conclusion that Claimant's Fourth Amendment rights were violated by the detention of her luggage and that there could be no inevitable discovery rule justifying the officers conduct in further detaining her luggage.

At the time of the detention of Claimant's luggage, the only facts the agents had which could have justified a further detention were those stated above - she had paid cash the day before for a one-way ticket, she was allegedly hesitant in her responses, she did not have a key to one of the bags, and the bag appeared heavy. It is unimaginable how those factors, individually or collectively, could provide these four inquiring agents with the reasonable suspicion necessary to further detain her luggage – a "reasonable and articulable suspicion" that Claimant's luggage contained narcotics or currency that was **connected to narcotics trafficking**. See *United States v. Ayarza,* 874 F.2d 647, 651 (9th Cir. 1989). Without that reasonable and articulable suspicion, the detention of Claimant's luggage violated her Fourth Amendment rights.

The government points to the fact that Claimant happened to pay for her ticket in cash as being suspect. However, this is insufficient, alone or in combination with the other circumstances of Claimant's travel, for a finding of reasonable suspicion. In *United States v. Eustaquio*, 198 F.3d 1068 (8th Cir. 1999), the Eighth Circuit Court of Appeals held that an officer lacked reasonable suspicion for an investigative detention when a defendant appeared nervous, had traveled from a drug source city without having checked any luggage, had bought a one-way airline ticket **with**

**cash**, and nobody met her at the airport,[4] because "Too many people fit this description for it to justify a reasonable suspicion of criminal activity." Therefore, despite the government's desire to have all purchases of travel tickets for cash supply the requisite reasonable suspicion, the courts have found that factor insufficient. See, e.g. *United States v. $242,484.00*, 351 F.3d 499, 509, 510 (11th Cir. 2003); *United States v. $121,100.00*, 999 F.2d at 1507 (citing *United States v. Sokolow*, 490 U.S. 1, 8-9, 109 S. Ct. 1581, 1586, 104 L. Ed. 2D 1 (1989)).

Furthermore, there is no further suspicious behavior by Claimant here. The agents began the consensual encounter by identifying Claimant and confirming her identity and the fact that she was traveling under her own name and that he was a resident of California. This initial fact **reduces** suspicion. See *United States v. $ 67,220.00*, 957 F.2d 280, 285 (6th Cir. 1992) (holding that traveling under one's own name reduces suspiciousness of travel). Further, agents had no suspicious information whatsoever about Claimant's travel plans.

Finally, when asked about possessing illegal narcotics or a large amount of currency, Claimant **admitted** to having approximately $7,000 dollars in currency in her luggage. It would be wholly absurd to hold that because claimant admitted to possessing cash, the scales tip in favor of the government and suffice to establish reasonable suspicion. Aside from encouraging a policy of punishing any traveler for being forthcoming and telling the truth to law enforcement, the admittance should have quelled suspicions in the mind of a reasonable officer, not obviate the

---

[4] The defendant in *Eustaquio* (1) exhibited nervous movement and a straight-ahead gaze; (2) chose a direct path to leave the terminal; (3) did not having any checked luggage; (4) arrived from a source city for narcotics trafficking; (5) made a same-day purchase of a one-way airline ticket with cash; (6) there were no friends and family meeting defendant at the airport; (7) she did the opposite of what the stopping officer asked; and (8) exhibited a bulge under her clothing. See 198 F.3d 1068 at 1071.

need for more investigation.  It demonstrates to a **reasonable** law enforcement agent that Claimant believed she had nothing to hide and suggests that claimant was not involved in any illegal activity. See *United States v. $242,484.00,* 351 F.3d 499, 512 (11th Cir. 2003) ("Stanford's traveling under her own name and her honesty about her possession of currency and its amount go a long way to easing any suspiciousness raised by some evasiveness with the agents.")

As the government concedes, the inevitable discovery rule requires that the agents had probable cause for the search of Claimant's luggage independent of the search, justifying its further detention and search.  *United States v. Timothy Brown*, 328 F.3d 352, 357 (7th Cir. 2003); *United States v. Gravens*, 129 F.3d 974, 979 (7th Cir. 1997).  But, the information available to the agents here - that  Claimant paid cash for her one way ticket the day before departure, that she was hesitant in her responses, that she did not have a key to one of the bags, and that the bag appeared heavy - fall far short of that.  If the government's argument would be accepted, a vast number of innocent citizens would be subjected to having their possessions seized without a warrant under the inevitable discovery doctrine.

III.    **Even If Agents Had Initial Reasonable Suspicion to Temporarily Detain the Luggage, Agents Lack of Due Diligence in Securing a Dog Sniff Renders the Seizure Illegal Under *United States v. Place*.**

Even if this court finds that agents had enough reasonable suspicion to temporarily detain Claimant's luggage, "In order for the fruits of this investigatory detention [of luggage] to be admissible, [ ]the seizure itself must be conducted in a reasonable manner. A seizure is reasonable if: (1) the length of the detention is sufficiently short, **and** (2) government agents act with diligence in pursuit of their investigation." *United States v. Place*, 462 U.S. 696, 709, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983).. Here, like in *Place,* "the limitations applicable to investigative

detentions of the person should define the permissible **scope** of an investigative detention of the person's luggage on less than probable cause. Under this standard, it is clear that the police conduct here exceeded the permissible limits of a *Terry*-type investigative stop." *Place* 462 U.S. 696 at 709 (emphasis added).

First, "the brevity of the invasion of the individual's *Fourth Amendment* interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." *Place*, 462 U.S. at 709.

In *Place*, the Supreme Court found unreasonable the ninety-minute seizure of the defendant's luggage based only on the law enforcement officers' reasonable suspicion that the luggage contained contraband. The Court stated, "[w]e have never approved a seizure of the person for the prolonged 90-minute period involved here and cannot do so on the facts presented by this case." *103 S. Ct. at 2646*. The Court, however, "decline[d] to adopt any outside time limitation" beyond which all such seizures would be unreasonable, and left the question of the reasonableness of a detention for resolution on a case-by-case basis. *Id. See, Moya v. United States,* 761 F.2d 322, 326-327 (7th Cir. 1984); S*ee also United States v. Puglisi,* 723 F.2d 779, 791 (11th Cir. 1984); *United States v. West,* 651 F.2d 71 (1st Cir.), *vacated and remanded*, 463 U.S. 1201, 103 S. Ct. 3528, 77 L. Ed. 2d 1382 (1983) (remanding to district court question why agents did not have trained dog in immediate vicinity).

Regardless of the absolute length of the detention, "in assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation." *Place*, at 462 U.S. at 709. *See, U.S. v. $191,910 in U.S. Currrency,* 16 F.3d 1041, 1061 (9th Cir.

1994) ("Where ... government agents are at the airport awaiting a particular individual who they know is coming on a particular flight and whom they suspect of drug trafficking, they should arrange for a dog to be sent to the appropriate location as soon as they decide to meet the plane themselves.")

In the present case, the agents were well aware that Claimant would be arriving at the Union Station in Chicago since all four of them had arrived at the station to await the train themselves. The agents then, after interro9gating her in her sleeper car compartment on the train, had the leave her compartment, leave the train, travel to Union Station and enter another office at Union Station, where the agents then extensively questioned Claimant, including giving her a statement of rights form which she refused to sign and a written consent to search form which she also refused to sign. Gov't. Opp. at 3-4. It was only after that prolonged period of time that the agents then had a narcotics detection dog inspect Claimant's bag.

Therefore, like in *Place* and *$191,910,* the agents here "went beyond the **narrow authority** possessed by police to detain briefly luggage reasonably suspected to contain narcotics." *U.S. v. Place,* 462 U.S. at 710 (emphasis added). By such a prolonged detention, the government unlawfully prolonged the detention of Claimant's bag in violation of her Fourth Amendment rights. In addition, the government cannot use such a canine alert, if such did occur, to support its argument that the currency in Claimannt's luggage would have been inevitably discovered.

**IV.     A Dog Sniff, Even if Timely, is Not, in Itself, Sufficient to Justify the Issuance of a Search Warrant.**

In response to the government's further contention that a purported dog alert indicates that the currency had "*recently* been in close proximity with controlled substances", *United States v.*

*United States Currency, $30,060.00, 39 F.3d 1039, 1043 (9th Cir. 1994)* summarizes the issue as to currency *ever* being in proximity with a controlled substance:

> "Cocaine can be easily transferred simply by shaking hands with someone who has handled the drug: a pharmacist, toxicologist, police officer, or drug trafficker" Id. at 979. In fact, "a single bill used to snort cocaine or mingled with the drug during a transaction can contaminate an entire cash drawer." Debbie M. Price, *Use of Drug-Sniffing Dogs Challenged: ACLU Backs Complaint by Men Whose Pocket Cash is Seized,* Wash. Post, May 6, 1990, at D1, D6 (citing study of Lee Hearn, chief toxicologist for the Dade County, Florida Medical Examiner's Office). Those bills go on to contaminate others as they pass through cash registers, wallets, and counting machines *$ 639,558.00, 955 F.2d at 714 n.2* (citing Crime and Chemical Analysis, 243 Science 1554, 1555 (1989)); David B. Smith, *Prosecution and Defense of Forfeiture Cases,* Par. 4.03 at 4-79 (1993). Given that an estimated one out of three circulating bills has been used in a drug transaction, currency contamination comes as no surprise. *$ 639,558 in U.S. Currency, 955 F.2d at 714 n.2* (citing R. Siegel, Intoxication 293 (1989)); see also Jeff Brazil & Steve Barry*, You May be Drug Free, But is Your Money? Cocaine is Found on the Cash of 8 Non-users. The Test Suggests That a Drug Dog Would Detect Cocaine on Almost Anyone's Money*, Orlando Sentinel, June 15, 1992, at A6 (noting that of eight samples of cash taken from a police chief, a circuit judge, a state senator, a mayor, a community college president, the Orlando Sentinel editor, a reverend, and a county chairman, six out of the eight samples showed detectable amounts of cocaine that were "well within the range of a drug dog's detection ability").
>
> … *See $ 53,082 in U.S. Currency, 985 F.2d at 250 n.5* (citing study by Lee Hearn, chief toxicologist for the Dade County, Florida Medical Examiner's Office, finding that ninety-seven percent of bills taken from various cities throughout the United States tested positive for cocaine); $ 639,558 in U.S. Currency, 955 F.2d at 714 n.2 (referring to testimony of Dr. James Woodford that ninety percent of all cash in the United States contains sufficient quantities of cocaine to alert a narcotics detection dog); *$ 80,760 in U.S. Currency, 781 F. Supp. at 475-76* (citing study by Dr. Jay Poupko and his colleagues at toxicology Consultants Inc. in Miami, Florida, finding that an average of ninety-six percent of the analyzed bills taken from various cities throughout the United States, including Los Angeles, tested positive for cocaine).
>
> *United States v. United States Currency, $30,060.00, 39 F.3d 1039, 1042-1043 (9th Cir. 1994).*

Since it is likely that a dog will almost always alert to large amounts of currency, such an alert does not assist in the probable cause determination. And, this circuit's recent decision in

13

*United States v. ($30,670.00)*, 403 F.3d 448 (7th Cir. 2005) does not assist the government here, since the court in *$30,670.00* did not base their decision on the dog sniff alone, but instead on numerous other facts in the record that indicated that there was a substantial connection between the seized funds and illegal narcotics transactions, facts which are not present in this case. [5]

### V. Claimant Respectfully Requests an Evidentiary Hearing if Necessary to Resolve Any Contested Facts.

As Claimant stated in her earlier pleading, if this Court holds that there are unresolved conflicting factual allegations, an evidentiary hearing should be held to resolve those contested issues of facts material to the Court's determinations. An evidentiary hearing on this motion to suppress is required if the court concludes from the moving papers that there are unresolved contested issues of fact going to the validity of the search at issue and "if proven would justify relief." *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998). See also *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986).

The district court is obliged to hold a hearing if Claimant's version of facts shows that the search was illegal. *Cf. United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1988); *Nechy v.*

---

[5] In *United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670.00)*, 403 F.3d 448 (7th Cir. 2005) the court seized on the following facts to uphold the lower court's decision to grant summary judgment in favor of the plaintiff: (1) the money at issue was found stuffed into a woman's girdle being worn by a male passenger, the claimant, while attempting to board a flight to Phoenix (2) the claimant lied about the fact that he had visited Phoenix seven times in the two months preceding the seizure; (3) Phoenix, Arizona is a known source for narcotics; (4) claimant purchased one way tickets to Phoenix, the day of or the day before his travel on each trip; (5) the claimant lied about which hotel he stayed at while in Phoenix; (6) claimant lied about his plans to move to Phoenix; (7) claimant had no credible explanation for the source of the $30,670; (8) claimant's expenses in the years preceding the arrest were far greater than his income; (9) there was a positive dog alert to the cash; and (10) the claimant did not dispute any of the plaintiff's facts giving rise the seizure.

*United States*, 665 F.2d 775, 776 (7th Cir. 1981); see also *United States v. Sophie*, 900 F.2d 1064, 1071-72 (7th Cir. 1990).

> Whether the factual conflict here is material depends on whether the arrest's legality differs under the different versions of facts. If the arrest was legal under either version of the facts, we must affirm the district court; if the arrest was illegal under either version of the facts, we must reverse. Only if the arrest was legal under the government's facts but illegal under Berkowitz's must we remand for an evidentiary hearing.
>
> *United States v. Berkowitz*, 927 F.2d 1376, 1385 (7th Cir. 1991).

Claimant submits that, just as in *Berkowitz*, she has demonstrated that the agents actions resulted in a coercive detention and an illegal search and seizure; and, if this Court deems there are contradictory versions of this encounter that need to be resolved by the Court in order to make a determination of the issues, an evidentiary hearing is required to resolve those two contradicting versions of events.

## VI.  Conclusion

The encounter between Claimant and four government agents in her sleeper compartment on an Amtrak train was such a coercive encounter as to, itself, constitute a Fourth Amendment seizure, not supported by any reasonable suspicion. Furthermore, any alleged consent given by Claimant was vitiated by the coercive atmosphere of her detention and the seizure and search of Claimant's luggage was made in violation of the Claimant's Fourth Amendment rights. And, under the circumstances of this case, the government cannot rely on inevitable discovery to justify the seizure and search of Claimant's luggage.  Consequently all the evidence, directly or indirectly, that resulted from this illegal conduct, must be suppressed in this case.

In addition, if this Court deems it necessary to conduct an evidentiary hearing to resolve any contested issues of fact, such an evidentiary hearing is so requested.

Dated:  4 September 2008

       Respectfully submitted,

       S/DAVID M. MICHAEL_____
       DAVID M. MICHAEL, CSBN 74031
       LAW OFFICES OF DAVID M. MICHAEL
       101 California Street, Suite 2450
       San Francisco, CA 94111
       Telephone:   (415) 946-8996
       Facsimile:    (877) 538-6220
       E-mail:        dmmp5@aol.com

       S/DIANA T. FRAPPIER_____
       DIANA T. FRAPPIER CSBN 184048
       344  40th Street
       Oakland, CA 94609
       Telephone:   (510) 428-3939
       Facsimile:    (415) 233-4477
       E-mail:        esqdiana@comcast.net

       S/MICHAEL C. ROSENBLAT_____
       MICHAEL C. ROSENBLAT, ESQ.
       33 N. LaSalle, Suite 2900
       Chicago, IL 60602-2665
       Telephone: (312) 948-0006
       Facsimile:   (312) 551-0322

       Attorneys for Claimant JOCELYNE MARIE JACKSON

**CERTIFICATE OF SERVICE**

I hereby certify that, on 4 September 2008, I caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

AUSA Charles E. Ex
Office of the U.S. Attorney
Northern District of Illinois
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604

S/ DAVID M. MICHAEL
DAVID M. MICHAEL
